GERTRUDE CHEZIK, Appellant, v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, a Corporation, Respondent.

(218 N. W. 217.)

**Appeal and error — when party requesting instructions may not complain.**

1. A party requesting the giving of an instruction to the jury on the theory that it is the duty of the jury under the evidence to determine certain ques-

tions of fact, will not be heard later to complain that such questions should have been determined by the court.

**Evidence — in cross-examining expert witness, his attention may be drawn to authoritative works.**

2. Where an expert witness bases an opinion in whole or in part upon a certain authoritative work, it is permissible, in cross-examination, to draw his attention to expressions of the particular authority, not for the purpose of using the extracts as contrary evidence, but to assist the jury in weighing the testimony of the expert. State v. Brunette, 28 N. D. 539, 150 N. W. 271, Ann. Cas. 1916E, 340.

Opinion filed February 18, 1928. Rehearing denied March 21, 1928.

Appeal and Error, 4 C. J. § 2625 p. 713 n. 63. Evidence, 22 C. J. § 813 p. 724 n. 4.

Appeal from the District Court of Burke County, *Lowe,* J.
Affirmed.

*E. R. Sinkler* and *G. O. Brekke,* for appellant.

If the undisputed facts are of such a character that reasonable men might draw different conclusions or deductions therefrom, then the question of negligence and contributory negligence is for the jury. Pyke v. Jamestown, 15 N. D. 157; Rober v. Northern P. R. Co. 25 N. D. 395; Kunkel v. Soo R. Co. 18 N. D. 367.

It is the duty on the part of the railway company to keep a proper lookout at a highway crossing especially within the limits of cities. Rober v. Northern P. R. Co. 25 N. D. 410; Coulter v. Great Northern R. Co. 5 N. D. 568.

That the negligence of the driver of a vehicle cannot be imputed to the occupants of the car has been well established. Ouverson v. Garfton, 5 N. D. 251; Pendroy v. Great Northern R. Co. 17 N. D. 423; Amenia Land Co. v. Soo R. Co. 48 N. D. 1338.

"Where a person is confronted with an obvious peril, he is required to exercise care and caution commensurate with the peril. This, however, is to be determined by the conduct of ordinarily prudent men, confronted by such peril under like circumstances." Missouri P. R. Co. v. Fox, 83 N. W. 744; Hanford v. Omaha & C. B. Street R. Co. 40 A.L.R. 970.

"It is not proper on cross-examination to ask a medical expert if he is acquainted with a certain book, and, calling his attention to a certain paragraph, ask a question in the language of the book and thus indirectly

introduce such passage in evidence." Marshall v. Brown (Mich.) 15 N. W. 55.

John E. Palmer, B. L. Wilson, and McGee & Goss, for respondent.

"When a witness is testifying as an expert it is competent to test his knowledge and accuracy on cross-examination by reading to him and having him read extracts from standard authorities upon the subject-matter involved and then asking him if he agrees or disagrees with the authorities and then by comparing his opinion with those of the writer." State v. Brunette, 28 N. D. 539, 150 N. W. 271.

"The fact that though an expert does not base his opinion on a particular authority, counsel may be permitted on cross-examination to read and introduce excerpts from a scientific authority for the purpose of testing the knowledge of the witness, has been further fortified by the reported case (State v. Brunette) and other decisions." State v. Mueller, 40 N. D. 35, 168 N. W. 66.

"Unless the order denying or granting a new trial made after the judgment is appealed from, either in connection with the appeal from the judgment or independently, the decision of the court below upon the question of sufficiency of the evidence to justify the finding of verdict, will be res judicata."

"An appeal from a judgment alone is ineffectual to bring up the review of an order made subsequent to judgment, denying a new trial." Paulsen v. Modern Woodmen, 21 N. D. 235, 130 N. W. 231.

BIRDZELL, J. On the morning of October 20, 1926, the plaintiff, together with three other ladies, went for a ride in an automobile, driving from Portal to the neighboring village of Flaxton. The car was being driven by a Mrs. Holmes, the plaintiff riding in the rear seat. As they were driving eastward into the village of Flaxton, they would cross the right of way of the defendant at a point where there were four tracks, one main track and three side tracks. Upon the track nearest them as they approached were some box cars which had been left near, or partially upon, the highway and which would obstruct the view of the tracks lying to the east. There was a freight train in the village at the time and as the automobile was crossing some freight cars which were not attached to the engine approached the crossing at a slow rate of speed, coming in contact with the automobile. The crossing was

unguarded. All the occupants of the car, except the driver, succeeded in getting out of the car and avoiding direct injury from the collision. The driver got out of the car but was caught and dragged a short distance. The plaintiff while escaping fell but sustained no serious perceptible injury at the time. She was pregnant, however, and two months later was delivered of a dead fetus.

The plaintiff brings this action to recover for personal injuries alleged to have been sustained while endeavoring to avoid being caught in the collision and for impairment of her health. Upon the trial the jury returned a verdict for the defendant. A motion for a new trial was later made and denied.

Upon this appeal there are two main contentions: First, that, under the undisputed evidence in the case, negligence and contributory negligence were so clearly established and negatived, respectively, that the verdict should be set aside as contrary to the evidence and that the court should have so instructed the jury as to have removed these questions from consideration; second, that there was prejudicial error committed in allowing the defendant's attorney, in cross-examining an expert witness for the plaintiff, to read from a text book matter having a tendency to contradict the opinion of such expert.

At the trial there seemed to be no substantial dispute concerning the circumstances which lead up to the collision. The greater part of the evidence related to the physical condition of the plaintiff before and after the accident, more specifically as to whether pregnancy dated from March or April, or from June or July. The date of the pregnancy was considered material as bearing upon whether or not the death of the fetus had taken place prior to the happening of the accident. It will serve no good purpose to review this evidence in detail. It is sufficient, for the purpose of this appeal, to indicate the character of the issue to which attention was mainly devoted upon the trial.

In instructing the jury the court, after outlining the issues as presented by the pleadings and placing the burden of proof upon the plaintiff, defined the term "negligence" as follows: "Negligence is a relative term and whether or not a certain act is or is not negligent, depends upon all the circumstances, and must of necessity vary with the circumstances of each particular case. Negligence is the want of care required by the circumstances, and has been described as that want of

care which men of common sense and common prudence ordinarily exercise in like employment. The degree of care required is in proportion to the nature and requirement of the business, in view of the probable danger of injury." It then defined contributory negligence as amounting to a want of ordinary care concurring or co-operating with the negligent act of the defendant and proximately causing the injury complained of, further stating that in determining whether the plaintiff was guilty of contributory negligence her act must be measured by what an ordinarily prudent person under the same circumstances and surroundings would have done. To this was added the following charge: "When one is placed in a position of danger by the negligence of another, her attempt to escape danger, even by doing an act which is also dangerous, and from which injury results is not guilty of contributory negligence, such as will prevent her from recovering for an injury, if the attempt be such as a person acting with ordinary prudence might under the circumstances make." Further charging with reference to the question of negligence, the court said: "So far as the negligence of the defendant is concerned I charge you that it is the duty of a railroad when switching cars across a village or city thoroughfare, to keep a lookout, or brakeman or flagman at said crossing to give such warnings of the approach of cars across said crossing as to give the public using the highway a reasonable opportunity to avoid danger."

It is argued that instead of charging the jury on the subject of negligence and contributory negligence as above, the court should have charged that the evidence offered to prove the negligence of the defendant was uncontradicted and that the acts and omissions thereby shown constituted negligence. It is said that there were no facts shown in the case tending to prove that any act of the plaintiff in attempting to avoid being injured in the collision was not consistent with the exercise of due care and that the questions of negligence and contributory negligence should have been removed from the consideration of the jury. The record shows, however, that the plaintiff made a written request for a charge on the subject of contributory negligence covering a situation where a person is called upon to act hastily in an emergency, a subject which was substantially covered in one of the above quoted portions of the charge. In this requested instruction the negligence and contributory negligence were spoken of as follows:

"If you find from the evidence in this case that the defendant was negligent and that by such negligence the plaintiff was placed in a position of danger which danger required immediate and rapid action without time to deliberate as to the better course to pursue, then I charge you that plaintiff cannot be held to the strict accountability of one situated under more favorable circumstances, and contributory negligence may not necessarily be chargeable to the plaintiff on her failure to exercise the greater prudence or best judgment under the circumstances."

It will be seen that the court did instruct the jury specifically as to the duty of the defendant to keep a lookout or brakeman or flagman at a crossing to give warning of the approach of cars. This instruction, in the light of the undisputed evidence which showed that this duty was not discharged in this case, was equivalent to a statement to the jury that the defendant had failed in its duty in this respect. There was not only no request for such a charge as the plaintiff now contends should have been given, but the request actually made, it will be observed, was predicated upon the hypothesis that the jury should determine both the questions of negligence and contributory negligence from the evidence —the introductory clause being, "If you should find from the evidence in this case that the defendant was negligent," etc. The specific request was an invitation to submit to the jury the question of contributory negligence under the existing circumstances. The jury having been correctly instructed as to the duty of the defendant, it must be assumed that they were mindful of the state of the evidence. In the absence of a specific request that the questions of negligence and contributory negligence be withdrawn from the consideration of the jury or be separately submitted, we cannot assume that any error prejudicial to the plaintiff occurred in this connection, especially where it appears, as here, that the plaintiff acquiesced in the submission of such questions to the jury. We are of the opinion that in this state of the record it must be assumed on appeal that the jury based its verdict upon the other issue in the case, which was more sharply contested, namely, whether the major injury complained of was occasioned by the collision.

A doctor testified as an expert for the plaintiff. Upon the assumption that the plaintiff's testimony relating to the happening of the accident and to her prior and subsequent symptoms was true, he stated that in his

opinion the death of the fetus had been caused by the injury received at the time of the accident. In his direct examination he stated that he had taken a course in De Lee's lying-in hospital in Chicago, and, on being cross-examined as to his familiarity with De Lee's book on the principles and practice of obstetrics, he said he was familiar with part of it; that he based his conclusion or opinion upon the testimony that was given and the knowledge he had obtained from that work and others and experience. This question was then put:

"If this author that you have cited, Mr. De Lee in his text book entitled 'Principles and Practice of Obstetrics' on page 447 has the following statement, 'The accoucheur is often called to testify as an expert in accidental cases, the woman suing for damages on the ground that an injury interrupted her pregnancy. The abortion must follow very shortly on the alleged injury or the death of the ovum must be shown to have very soon followed it, and the ovum must otherwise be normal, and the woman present some of the recognized causes of abortion for the medical witnesses to be able to assert for or against the plaintiff.' Now if that is the statement of that author, would you agree with that statement? A. I would agree with that statement only in part.

Q. And in what particulars would you disagree with it, doctor? A. That part of it in which the statement says that the abortion must follow, I believe it said shortly after the injury, in that I would say that— The Court: Answer the question just in what way you disagree with it. Q. You disagree with it in that connection? A. To some extent. Q. How about the author's statement 'or the death of the ovum must be shown to have very soon followed,' do you agree with that statement? A. I would agree with it to the extent I would say that the death of the ovum may soon follow. I would disagree with it to that extent. Q. How about the statement further 'and the ovum must be otherwise normal?' A. I would agree with that part of it, yes. Q. Would you agree with the other, 'and that the woman present none of the recognized causes of abortion' would you agree with that? A. The statement does not have anything to say about the recognized causes of abortion, whether it is criminal, accidental or otherwise. Q. The statement in the book is that the accoucheur, the party delivering the woman is often called to testify as an expert in accident cases. A. I would agree with that. Q. Is it a fact or not, in your opinion, that all those matters must coincide,

in other words, you must find all of those matters recited in the text before you could determine the cause of death of this child and the cause of it? A. Do you refer to the statement that is contained in the article that is just read? Q. Yes, sir, all of those statements, that they should coincide, that the injury caused the death. A. It may be that they all have to coincide before the death can be determined. Q. If, after this statement I read to you 'Indeed in these actions, the witness can usually only say that it is or is not probable that the abortion was caused by the accused's injury' would you believe that statement? A. I think I would."

Objections were made to this line of cross-examination on the ground that it would indirectly place before the jury the unsworn opinion of an author without possible resort to the test of cross-examination. Assuming that this objection would be well grounded had the expert disclaimed any degree of familiarity with, or reliance upon, the authority in question, its propriety cannot properly be tested in the same manner where the expert has professed to base his opinion wholly or in part upon the work of the particular author which he recognized as authority.

This subject was considered at length by this court in an opinion on rehearing in the case of State v. Brunette, 28 N. D. 539–554, 150 N. W. 271. It is not necessary to restate the conclusions reached in that opinion. They clearly recognize the propriety of cross-examining an expert witness with reference to data which form, in whole or in part, the basis of an opinion expressed by him, and, where it appears that a particular authority had been relied upon by such expert, they recognize the propriety of testing his knowledge and the accuracy of his deductions by drawing his attention, during cross-examination, to the expressions of the particular authority. 3 Wigmore, Ev. 2d ed. § 1700; 4 Jones, Ev. 2d ed. § 1745. This is not permitted for the purpose of using the selected extracts as contrary evidence, but for the purpose of enabling the jury to better weigh the testimony of the expert. We are of the opinion that the cross-examination in the instant case was clearly proper within the rule of the Brunette Case, supra.

Judgment affirmed.

Nuessle, Ch. J., and Burke, Burr, and Christianson, JJ., concur.